**2014 BNH 005   Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:

| | |
|---|---|
| Ellen Bridget Stone,<br>    Debtor | Bk. No. 12-12183-BAH<br>Chapter 7 |

| | |
|---|---|
| Ellen Bridget Stone,<br>    Plaintiff, | |
| v. | Adv. No. 13-1025-BAH |
| Highlands Fuel Delivery, LLC,<br>d/b/a Irving Energy Distribution and Marketing,<br>    Defendant | |

*Michelle Kainen*
*Kainen Law Office, P.C.*
*PO Box 919*
*White River Junction, VT*
*Attorney for Plaintiff-Debtor*

*Randy J. Creswell*
*Perkins Thompson, P.A.*
*1 Canal Plaza, 9th Floor*
*Portland, ME*
*Attorney for Defendant*

## MEMORANDUM OPINION

**I.  INTRODUCTION**

On March 13, 2013, Ellen Bridget Stone (the "Debtor") commenced this adversary proceeding, alleging that Highlands Fuel Delivery, LLC, d/b/a Irving Energy Distribution and

1

Marketing ("Highlands") violated the discharge injunction imposed by 11 U.S.C. § 524(a). Specifically, the Debtor alleges that Highlands's action in not affirmatively withdrawing its pre-petition motion for periodic payments in a pending state court lawsuit, resulting in the issuance of a bench warrant after the entry of the Debtor's bankruptcy discharge, constituted a violation of the discharge injunction.

On October 11, 2013, after the completion of discovery, Highlands filed a Motion for Summary Judgment (Doc. No. 14) ("Highlands's Motion"). On November 12, 2013, the Debtor filed an Opposition and Cross-Motion for Summary Judgment (Doc. No. 19) (the "Debtor's Motion"). On December 10, 2013, Highlands filed an Objection (Doc. No. 23) (the "Objection") to the Debtor's Motion. On December 16, 2013, the Court held a non-evidentiary hearing on the cross-motions for summary judgment, heard oral argument from the parties, and took the matter under submission.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II.  FACTS**

The facts relevant to Highlands's potential liability for a violation of the discharge injunction are not in dispute. However, in the event the Court finds Highlands liable, Highlands disputes the Debtor's alleged damages.

    A.    **Background**

Prior to the Debtor's bankruptcy, Highlands commenced a small claims action against her in the District Division of the New Hampshire Circuit Court (the "Small Claims Action"). On

June 12, 2012 (also prior to the petition date), Highlands obtained a judgment against the Debtor in the Small Claims Action in the amount of $2,594.38 (the "Judgment").

On July 6, 2012 (the "Petition Date"), the Debtor filed a chapter 7 bankruptcy petition. On July 11, 2012, notice of the Debtor's bankruptcy case was sent to Highlands by first class mail to a PO Box address. On July 12, 2012, Highlands filed a motion for periodic payments (the "Motion for Periodic Payments") in the Small Claims Action on account of the Judgment. As a part of the Motion for Periodic Payments, Highlands requested that a law enforcement officer effect personal service of any orders of notice that the state court issued in the Small Claims Action. Highlands understood that it would be responsible for such service costs.

On July 25, 2012, Highlands received notice of the Debtor's bankruptcy. Upon receipt of the notice, Highlands "re-coded" the Debtor's account from "collection" to "bankruptcy status." Neither party filed a suggestion of bankruptcy in the Small Claims Action at any time. Highlands alleges that it took no further affirmative collection action, and effectively *any* action, with regard to the Debtor or the Judgment after July 12, 2012.

On September 26, 2012, the state court sent the following to Highlands: (1) Instructions to [Highlands] for Serving Orders of Notice by Law Enforcement Officer (the "Instructions")[1]; (2) three separate Order of Notice documents all dated September 26, 2012 (a file copy, Debtor's copy, and Highlands's copy) (the "Order of Notice"); and (3) a Return of Service regarding the Motion for Periodic Payments. According to the Instructions, Highlands was required to deliver the Instructions, the Order of Notice, and the Return of Service, to the Sullivan County Sheriff

---

[1] The Instructions included the following language (emphasis in original):
    The 'Return of Service' form MUST be returned to the court by January 07, 2013, after service has been made on the [Debtor]. Please include a copy of your paid bill for sheriff's fees in order that these costs may be added to your claim. Effective July 1, 2009 if you ask the court to issue new orders of notice a fee of $25.00 will be assessed.
    You, as plaintiff need not appear at this hearing, but if you do not, you waive your right to examine the [Debtor] regarding his/her assets.

3

(the "Sheriff") for service on the Debtor.  According to Highlands, the Sheriff was then required to serve the Debtor with copies of the Instructions and the Order of Notice, after which the completed Return of Service was to be filed in the Small Claims Action by January 7, 2013.  The Order of Notice indicated that the state court scheduled a hearing on Highlands's Motion for Periodic Payments for January 17, 2013.  Highlands alleges that it did nothing with the Instructions.  Specifically, Highlands alleges that it "did not send [the Instructions] to the Sheriff to be served upon [the Debtor] (as required by the Instructions and the Order of Notice) so that the hearing on the Motion [for Periodic Payments] scheduled for January 17, 2013 could go forward."  Highlands argues that these actions were "procedurally necessary for the hearing on January 17, 2013 to properly go forward."[2]

On October 3, 2012, the Court issued a discharge of the Debtor pursuant to § 727 of the Bankruptcy Code (the "Discharge Order").  According to the Court's docket, the Discharge Order was served on Highlands on October 5, 2012.  Highlands admits that it received notice of the Discharge Order.  On October 19, 2012, the Court closed the Debtor's bankruptcy case.

On January 17, 2013, the state court held a hearing on the Motion for Periodic Payments.  Neither the Debtor nor Highlands appeared at the hearing.  After the hearing, the state court issued an order dated January 23, 2013, directing that a bench warrant issue against the Debtor (the "Bench Warrant Order").

On January 28, 2013, the following events took place: (1) the state court issued an order – apparently *sua sponte* – vacating the Bench Warrant Order because there had been no service of the Instructions and the Order of Notice on the Debtor; (2) the Debtor became aware of the Bench Warrant Order; (3) Debtor's counsel filed a Motion to Vacate Arrest Warrant (the

---

[2] According to Ex. E to Highlands's Motion, a document provided by the New Hampshire Circuit Court Service Center stated the following, in relevant part: "If you don't provide the court with proof of service, and the defendant does not appear, the case will be closed with no further order."

"Motion to Vacate") requesting that the state court vacate its issuance of the Bench Warrant Order; and (4) Debtor's counsel filed a motion to reopen the Debtor's bankruptcy case to pursue a violation of the discharge injunction.[3]

On January 30, 2013, Debtor's counsel received notice that the state court had vacated the Bench Warrant Order. On February 26, 2013, the state court issued an order denying the Debtor's Motion to Vacate as moot, noting that the court had vacated the Bench Warrant Order on January 28, 2013, prior to the Debtor's Motion to Vacate. On March 13, 2013, the Debtor commenced this adversary proceeding.

### B. The Parties' Positions

Highlands argues that it is entitled to summary judgment in its favor because it did not commit any act with knowledge of the Discharge Order, nor did the Discharge Order clearly and unambiguously set forth the precise conduct and acts that the Discharge Order and the discharge injunction prohibit.[4] Highlands further argues that it did not act in bad faith or with malicious intent toward the Debtor.

The Debtor argues that she is entitled to summary judgment in her favor because Highlands's failure to affirmatively request that the state court refrain from holding the hearing

---

[3] The Court granted the motion to reopen on January 30, 2013.
[4] The Court's standard Discharge Order stated that "The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)." The Discharge Order also contains an explanation of the bankruptcy discharge, which states, in relevant part:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. [*In a case involving community property: There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.*] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.
> …
> **This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

on the Motion for Periodic Payments, and issuing the Bench Warrant Order, is sufficient to constitute a violation of the discharge injunction. The Debtor further argues that there is no *mens rea* requirement for violations of the discharge injunction, because such violations are remedied through the bankruptcy court's civil contempt powers under § 105 of the Bankruptcy Code, and civil contempt does not contain a *mens rea* element.

### III.  DISCUSSION

####   A.   The Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013) (citations omitted); Fed. R. Civ. P. 56(a) (made applicable to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056).[5] "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) (citations omitted).

In this case, the parties essentially agree on all the facts relevant to liability. What they disagree on is the legal significance of those facts, and which party may be entitled to summary judgment. Additionally, Highlands disputes the Debtor's alleged damages. Accordingly, it is appropriate for the Court to consider the matter of liability on summary judgment.

####   B.   Violation of the Discharge Injunction

Section 524 of the Bankruptcy Code governs a debtor's bankruptcy discharge. Section 524(a) provides, in relevant part, that "A discharge in a case under this title… (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived… ."

---

[5] Rule 56(a) was amended to substitute "dispute" for "issue," although that difference does not impact this opinion.

      1.      General Standard for Violations of the Discharge Injunction

"Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts." Bessette v. Avco Fin. Servs., 230 F.3d 439, 444 (1st Cir. 2000) (citations omitted). "A creditor violates the discharge injunction (or automatic stay)[6] when it (1) has notice of the debtor's discharge (or, in the case of the automatic stay, has notice of the bankruptcy filing); (2) intended the actions which constituted the violation; and (3) acts in a way that improperly coerces or harasses the debtor." Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009) (citations omitted). As one Bankruptcy Court summarized, a creditor violates the discharge injunction "when, with knowledge of the discharge, it intends to take an action, and that action is determined to be an attempt to collect a discharged debt." Murphy v. U.S. Dep't of Treasury (In re Murphy), 2013 Bankr. LEXIS 5340 at *20 (Bankr. D. Me., Dec. 20, 2013), citing Pratt v. GMAC, 462 F.3d 14, 21 (1st Cir. 2006).

Highlands had actual knowledge of the Debtor's bankruptcy as of July 25, 2012, and received notice of the Discharge Order in October 2012. The parties agree that Highlands took no actions after July 12, 2012, when it filed the Motion for Periodic Payments.[7] Courts have recognized that a creditor's inaction can be tantamount to action. See Miller v. Sav. Bank of Baltimore, 22 B.R. 479, 481 (D. Md. 1982) ("courts have been quick to realize that creditor

---

[6] As the Bankruptcy Appellate Panel noted, courts in the First Circuit treat stay violations and discharge violations interchangeably with respect to the issue of coercion.

[7] At the hearing, Highlands was equivocal on whether it affirmatively intended to take no action after learning of the Debtor's bankruptcy, or whether it took no action as a result of other circumstances (e.g., the employee with knowledge of the matter was let go, etc.). At the hearing, Highlands suggested that whether the inaction was affirmative, or just the result of circumstances, should not affect the outcome. That said, in at least one section of the Objection, Highlands appears to take the position that its inaction constituted some actual conduct in which it engaged. See Objection, p.12 ("[Highlands] did in fact adopt an approach reasonably calculated to meet those obligations. Highlands did exactly what the Discharge Order instructed; it took no further action to collect or to continue with its litigation.").

inaction can often be as disruptive to the debtor as affirmative collection efforts."). Accordingly, the Court must determine whether the result of Highlands's inaction was objectively coercive or coercive in effect, and whether the inaction constitutes a violation of the discharge injunction. See Curtis v. Salem Five Mortg. Co., LLC (In re Curtis), 2007 Bankr. LEXIS 627 at *14 (B.A.P. 1st Cir. Feb. 28, 2007) ("…a variety of somewhat passive acts are potentially violations of the discharge injunction if they are objectively coercive or coercive in effect.").

    2.    The "Objectively Coercive" Standard for Actions that may Violate the Discharge Injunction

In the First Circuit, "courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances." Lumb, 401 B.R. at 6 (citations omitted). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor." Id. at 7 (citations omitted). In other words, a creditor need not orchestrate every part of a possible violation of the discharge injunction, nor must it act in bad faith in order for a court to find that its actions were objectively coercive. See Pratt, 462 F.3d at 19.

Here, Highlands's intent in filing the Motion for Periodic Payments on July 12, 2012 was unquestionably coercive against the debtor, even though Highlands may then have been unaware of the chapter 7 petition filed six days earlier. Since the action was coercive when taken, it remained coercive until such time as it may be effectively withdrawn. Put another way, Highlands intended that the state court act upon the Motion for Periodic Payments when Highlands filed it, and Highlands did not effectively prevent continuation of that action – even if it was the state court, not Highlands, which caused the Bench Warrant Order to be issued. Whether or not Highlands was responsible for *all* of the circumstances that led to the Debtor

8

becoming aware of the Bench Warrant Order is irrelevant.  Similarly, whether or not Highlands intended by its actions or inaction to ultimately collect the discharged Judgment is not determinative.  See In re Murphy, 2013 Bankr. LEXIS 5340 at *20 ("To run afoul of the discharge injunction, a creditor need not expressly attempt to collect a discharged obligation.").  All parties in this proceeding agree that the Bench Warrant Order should not have issued; the fact is, it did issue.  What is relevant is that the process that Highlands set in motion – and which Highlands knew was still in motion after it became aware of the Debtor's bankruptcy and the Discharge Order – resulted in its issuance, and the Debtor becoming aware of its issuance.  Accordingly, the Court finds that Highlands violated the discharge injunction.

### C.     Enforcement of the Discharge Injunction Pursuant to § 105

"Although § 524 does not expressly set forth a private right of action, a bankruptcy court properly may enforce § 524(a)'s discharge injunction by invoking its equitable powers under § 105(a) as necessary or appropriate to assure its efficacy." Id. citing Bessette, 230 F.3d at 445-46. Section 105(a) allows a bankruptcy court to use its contempt powers to order monetary relief for violations of the discharge injunction.  Bessette, 230 F.3d at 445.  "For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion.  In determining specificity, the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991).

Highlands's attempt to distinguish between a party violating § 524(a)'s discharge injunction as a matter of law and a Bankruptcy Court *enforcing* that injunction through its contempt powers under § 105(a) seems subtle at best.  Indeed, in Pratt, the First Circuit Court of

Appeals moved straight from a finding that a creditor violated the discharge injunction to a conclusion that the debtor was entitled to establish and recover compensatory damages. See Pratt, 462 F.3d at 20 (finding that the creditor "willfully violated the discharge injunction. [The Debtors] are therefore entitled to establish and recover their compensatory damages, together with other appropriate relief under Bankruptcy Code § 105(a)."). Similarly, in Canning v. Beneficial Me., Inc. (In re Canning), 442 B.R. 165, 170 (Bankr. D. Me. 2011), the Bankruptcy Court set forth set forth a test for analyzing contempt for violations of the discharge injunction: "The debtor seeking a finding of contempt must prove: (1) that the alleged contemnor committed an act that violated the discharge injunction with general intent to commit the act; and (2) that it acted with knowledge of the discharge order." Thus, using the formulation in Canning, it is hard to separate the standard for finding a *violation* of the discharge injunction from the standard for finding *contempt* for a violation of the discharge injunction. In any event, Highlands is insistent that the only act it performed that could have been a violation of the Discharge Order was the filing of the Motion for Periodic Payments. Highlands concludes that because this act took place before the entry of the Discharge Order, it is impossible that Highlands acted in contempt of the Discharge Order. The Court does not agree with this conclusion.

     Both parties discuss Johnson v. Cadles of Grassy Meadows, II, LLC (In re Johnson), 466 B.R. 67 (Bankr. E.D. Va. 2012), and each party finds something useful in the opinion. There, a creditor obtained a judgment against the debtor and docketed that judgment in the state court clerk's office pre-petition. Id. at 69. According to the Johnson opinion, docketing "a judgment in the clerk's office of a circuit court in Virginia creates a lien on all real property owned by the judgment debtor in that city or county. Id. (citations omitted). The creditor in Johnson did nothing with regard to its docketed judgment following the debtor's bankruptcy petition or the

entry of discharge.  See id. at 72 n.3.  As the Bankruptcy Court explained, "A creditor's responsibility to mark a docketed judgment as 'discharged in bankruptcy' arises independently under both the Code of Virginia and the Bankruptcy Code.  The Bankruptcy Code does not permit a judgment credit to stand idly by when he knows that his debt has been discharged….  To do so violates the discharge [injunction] under 11 U.S.C. § 524(a)."  Id. at 72 (citations omitted).[8]  The court in Johnson ordered the creditor to mark its judgment "discharged in bankruptcy" within 30 days.  Id.  Thus, it is clear that the creditor in Johnson violated the discharge injunction by taking no affirmative act (i.e., failing to mark its judgment discharged was a violation of § 524(a)).  Highlands argues that while the court in Johnson found a violation of the discharge injunction, it "did not also hold the creditor in contempt."  The court in Johnson did not actually discuss contempt at all in fashioning its relief.  This Court notes that there may simply have been no monetary damages alleged in Johnson, and other than the existence of an "un-marked" judgment, no other wrong to remedy.

  Highlands further argues that the Discharge Order does not, within its four corners, "state that any creditor has the affirmative obligation to withdraw or dismiss litigation, or discrete motions in such litigation, that were pending" on the Petition Date, and thus Highlands's failure to act cannot be contemptuous of the Discharge Order.  Notwithstanding the analysis above, the Court disagrees that the Discharge Order was unclear.

  As explained in note 4, above, the Discharge Order granted the Debtor a discharge under § 727 of the Bankruptcy Code.  The Discharge Order's explanatory language notes that "*a creditor is not permitted* to contact a debtor by mail, phone, or otherwise, *to* file or *continue a lawsuit*, to attach wages or other property, or to take any other action to collect a discharged debt

---

[8] The court in Johnson explained that in Virginia, a "debtor is entitled to the public acknowledgment that her personal liability has been discharged; but she is not entitled to a release of the judgment and, therefore, the prepetition lien against any property that she may own or have owned in the county."

11

from the debtor" (emphasis added).  The discharge itself "operates as an injunction against the commencement or *continuation of an action*, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2) (emphasis added).  The prohibition on continuing a lawsuit is not ambiguous.  As one Bankruptcy Court noted, in examining virtually identical language in § 362(a)(1)[9]: "We simply do not see how it is possible to avoid the application of the plain language of the foregoing which enjoins 'the… continuation… of a judicial… proceeding against the debtor.' If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it.  It seems to us the question presented to us is as simple as that.  The statute is plain and unambiguous…. ."  In re Mitchell, 66 B.R. 73, 75 (Bankr. S.D. Ohio 1986).  Accordingly, the Court does not find ambiguity in the Discharge Order such that Highlands's failure to abide by it could be excused.

Finally, Highlands argues that even if the Discharge Order or § 524(a) of the Bankruptcy Code placed an affirmative duty on Highlands to act after the entry of the Discharge Order, Highlands "did in fact engage in conduct designed to comply with" that duty.  In support of this argument, Highlands notes that the state court itself confirmed that it entered the Bench Warrant Order in error, and suggests that the state court contravened its own rules and procedures by holding a hearing on the Motion for Periodic Payments.  Highlands appears to rely on language in the Instructions[10] and a document the New Hampshire Circuit Court Service Center provided[11] for the contention that its actions (or inaction) should have prevented the state court from holding a hearing and issuing the Bench Warrant Order.

---

[9] While Highlands may take issue with the fact that Mitchell concerned the automatic stay and not the discharge injunction, the Court cites it here for the conclusion that the Discharge Order was unambiguous.
[10] See footnote 1, *supra*.
[11] See footnote 2, *supra*.

> The Instructions contained the following language (emphasis in original):
>
> The 'Return of Service' form MUST be returned to the court by January 07, 2013, after service has been made on the [Debtor].  Please include a copy of your paid bill for sheriff's fees in order that these costs may be added to your claim.  Effective July 1, 2009 if you ask the court to issue new orders of notice a fee of $25.00 will be assessed.
>
> You, as plaintiff [i.e., Highlands] need not appear at this hearing, but if you do not, you waive your right to examine the [Debtor] regarding his/her assets.

The Instructions do not say that the state court would not hold the scheduled hearing on the Motion for Periodic Payments if service was not returned; they simply require that service be returned to the state court by the deadline of January 7, 2013.  Further, the Instructions suggest that the only consequence of the moving party's (i.e., Highlands) failure to appear at the hearing would be that the moving party waived its right to examine the Debtor.  In this case, Highlands had no actual information from the state court that the hearing on the Motion for Periodic payments was cancelled.

The checklist-like document provided by the New Hampshire Circuit Court Service Center contained the following language: "If you don't provide the court with proof of service, and the defendant does not appear, the case will be closed with no further order."  The Court notes that the document from which that language came does not appear to have the force of law.

The Rules of the Circuit Court of the State of New Hampshire – District Division suggest that Highlands's inaction was not certain to prevent the state court from holding the hearing. Rule 1.21 (governing motions for periodic payments) states, in relevant part:

> (2) Upon the filing of a written motion under subdivision (1), a notice of hearing will issue, requiring the judgment debtor to appear at a time and date named therein and to submit to an examination relative to the judgment debtor's property and ability to pay the judgment.  The judgment creditor shall cause the notice of hearing to be served either in-hand or by certified mail, restricted delivery, return receipt requested.  If the judgment creditor elects to serve the notice of hearing by certified mail, restricted delivery, return

13

> receipt requested, and if the return receipt is returned without indication that the notice of hearing has been properly served, then in-hand service shall be required.
> …
> (4) If the judgment debtor fails to appear at the hearing, the court may proceed, and orders may be made in the judgment debtor's absence or an order for arrest may be issued. Attendance by the plaintiff or plaintiff's counsel shall not be required unless ordered by the court.

Nowhere does Rule 1.21 state that a moving party's failure to file a return of service will result in the state court cancelling a hearing. However, the rule does suggest a situation in which both the moving party and the judgment debtor fail to appear and the state court still issues an order – including an order for the judgment debtor's arrest.

Thus, Highlands's inaction was not a course of "action" that was reasonably certain to prevent the continuation of the Small Claims Action. Moreover, Highlands was in the best position to take affirmative steps to prevent the state court from proceeding. As one bankruptcy court put it, "[t]he creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the 'continuation' is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed… Positive action on the part of the creditor is necessary so that 'continuation' is stayed." In re Sams, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (citations and quotations omitted).[12] The Court will not suggest what course of action would have been sufficient to prevent Highlands from violating the discharge injunction. Highlands chose the path that it deemed expedient, but "expedient" may not always

---

[12] As above, Highlands may take issue that Sams is a case concerning the automatic stay. However, the Court does not apprehend how the automatic stay's injunction against continuing an action against a debtor could materially differ from the discharge injunction's same prohibition. Put another way, Highlands's argument suggests that if the Discharge Order had not entered until *after* the state court issued the Bench Warrant Order, Highlands would have been liable for a violation of the automatic stay. However, because the timing of events was such that the Discharge Order entered *before* the state court issued the Bench Warrant Order, Highlands is absolved of responsibility for both a violation of the automatic stay and the discharge injunction. The inconsistency of that result is not supportable under the Bankruptcy Code.

be "sufficient."  The Court can only find that Highlands's course of inaction was insufficient to prevent the continuation of the Small Claims Action.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Highlands violated the discharge injunction of § 524(a).

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order, consistent with this opinion, granting the Debtor's Motion on the issue of liability, and scheduling a hearing on damages.  At such hearing, Highlands may argue the extent to which the circumstances of this case present mitigating factors in the Court's determination of any damages to which the Debtor may be entitled.

ENTERED at Manchester, New Hampshire.

Date:   March 31, 2014                              /s/ Bruce A. Harwood
                                                    Bruce A. Harwood
                                                    Chief Bankruptcy Judge